Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM OWENS, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-03853 |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| HELZBERG'S DIAMOND SHOPS, LLC, | |
| *Defendant.* | |

# Table of Contents

I.    Introduction.................................................................................1

II.   Parties. ......................................................................................4

III.  Jurisdiction and Venue. ..............................................................4

IV.   Facts...........................................................................................5

    A.   Defendant's fake sales and discounts....................................5

    B.   Defendant's advertisements are unfair, deceptive, and unlawful ...............13

    C.   Defendant's advertisements harm consumers. .....................14

    D.   Plaintiff was misled by Defendant's misrepresentations. .............................15

    E.   Defendant breached its contract with and warranties to Ms. Owens and the putative class. ...............17

    F.   No adequate remedy at law. .................................................18

V.    Class Action Allegations...........................................................19

VI.   Claims. ....................................................................................21

    First Cause of Action: Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq. ....................21

    Second Cause of Action: Violation of California's Consumer Legal Remedies Act (By Plaintiff and the California Subclass)...............23

    Third Cause of Action: Violation of California's Unfair Competition Law...........25

    Fourth Cause of Action: Breach of Contract .........................27

    Fifth Cause of Action: Breach of Express Warranty.............28

    Sixth Cause of Action: Quasi-Contract/Unjust Enrichment ...............29

    Seventh Cause of Action: Negligent Misrepresentation ............30

    Eighth Cause of Action: Intentional Misrepresentation ............31

VII.  Relief.......................................................................................32

# I.    Introduction.

1.    Advertised "sale" prices are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.    While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.

4.    Moreover, section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.  So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

5.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

6.    Moreover, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off of that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely

suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

7.      As numerous courts have found, fake sales violate these laws.  They also violate California's general prohibition on unlawful, unfair, and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

8.      Defendant Helzberg's Diamond Shops, LLC ("Helzberg" or "Defendant") makes, sells, and markets jewelry and accessories, such as diamond jewelry. The products are sold online through Defendant's website, www.helzberg.com.

9.      Defendant lists purported regular prices and advertises purported discounts from those listed regular prices, for example "15% Off Sitewide" or "$50 off $299+." Defendant also regularly represents that its sales are limited-time and on the verge of ending.  Examples are shown below:





10.    Far from being time-limited, however, discounts on all of Defendant's products are regularly available. And, for Helzberg products priced $300 and over ("High-Priced Products"), the items are consistently on sale. This is because there is nearly always a sitewide sale or a minimum value discount (e.g. $50 off $299+) that applies to products priced $300 or more. As a result, the list prices Defendant advertises for High-Priced Products are not actually Defendant's regular prices, because High-Priced Products are consistently available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited time—quite the opposite, they are consistently available.

11.    As described in greater detail below, Ms. Owens bought a High-Priced Product from Defendant from its website, helzberg.com. When Ms. Owens made her purchase, Defendant advertised that a sale was going on, and Defendant represented that the Product that Ms. Owens purchased was being offered at a discount from the

Class Action Complaint                    3                    Case No. 2:25-cv-03853

purported regular prices that Defendant advertised.  And based on Defendant's representations, Ms. Owens believed that she was purchasing a High-Priced Product whose regular price and market value was the purported list price that Defendant advertised, that she was receiving a substantial discount, and that the opportunity to get those discounts was time-limited.  These reasonable beliefs are what caused Ms. Owens to buy from Defendant when she did

12.    The representations Ms. Owens relied on, however, were not true.  The purported regular prices Defendant advertised were not the true regular prices at which Defendant usually sells the High-Priced Product that Ms. Owens purchased, the purported discounts were not the true discount, and the discount that Ms. Owens received was ongoing—not time-limited.  Had Defendant been truthful, Ms. Owens and other consumers like her would not have purchased the High-Priced Product, or would have paid less for them.

13.    Plaintiff brings this case for herself and on behalf of other consumers who purchased Helzberg Products at a purported discount.

## II.    Parties.

14.    Plaintiff Kim Owens is domiciled in Pico Rivera, CA.

15.    The proposed class includes citizens of every state.

16.    Defendant Helzberg's Diamond Shops, LLC, is a Missouri limited liability company with its principal place of business at 1825 Swift Ave., North Kansas City, MO 64116.

## III.    Jurisdiction and Venue.

17.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

18.    The Court has personal jurisdiction over Defendant because Defendant sold Helzberg Products and High-Priced Products to consumers in California, including to Plaintiff.

19.    Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Helzberg Products and High-Priced Products to consumers in California and this District, including to Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV.    Facts.

### A.    Defendant's fake sales and discounts.

20.    Defendant Helzberg manufactures, distributes, markets, and sells jewelry and accessories. For example, Helzberg sells its Products directly to consumers online, through its website, www.helzberg.com.

21.    Helzberg's products include diamond and engagement jewelry. Many of the Products that Defendant sells are over $300. For these High-Priced Products, Defendant creates the false impression that the regular prices are higher than they are.

22.    At any given time, on its website, Defendant advertises discounts on its High-Priced Products. Defendant regularly runs sitewide sales that offer a discount for all products. In addition, in cases where there is no sitewide sale for all products, Defendant nearly always offers a discount for purchases over $299.99.[1] The combined effect of these sales is that all products above $299.99 are almost always on sale, either because a sitewide discount applies, or because it qualifies as a purchase over $299.99.

---

[1] The discounts on High-Price Products fluctuate based on item price—for example, Defendant will offer a minimum $50 discount on all items priced over $300, with higher-priced items receiving greater discounts.

23.     Reasonable consumers reasonably interpret Defendant's advertisements to mean that they will be getting a discount off from the prices that Defendant usually charges for its High-Priced Products. Even though in truth these discounts run in perpetuity, Defendant prominently claims they are limited time. And it advertises these discounts extensively: on an attention-grabbing banner on every webpage of its website; in a large banner image on its homepage; and during checkout. Example screenshots are provided on the following pages:



*Captured July 13, 2022*



*Captured December 24, 2022*



*Captured January 9, 2023*

*Captured November 28 2023*



*Captured October 2, 2024*



*Captured on February 26, 2025*

24.     Defendant regularly represents that these discounts will only be available for a limited time, but in reality, the sales continue indefinitely.  For example, as depicted below, Defendant represented that its sales expire on a particular date or when the countdown clock expires, for example: "Ends soon! 2days, 14hr, 34min, 32 sec."  To reasonable consumers, this means that after the specified date, Defendant's High-Priced Products will no longer be on sale and will retail at the purported list prices Defendant advertises.  But immediately after each purportedly time-limited sale ends, Defendant generates another similar discount, with a new expiration date.

25.     For example, as depicted below, Defendant advertised a purportedly time-limited sale that "ends" on November 27, 2024:



*Captured on November 25, 2024*

26.     However, on December 1, 2024, only a few days after the time-limited sale was supposed to have ended, Defendant advertised another sitewide sale with a similar discount:

*Captured on December 1, 2024*

27.    To confirm that Defendant consistently offers discounts off of purported regular prices, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org).[2] That investigation confirms that Defendant's sales have persisted continuously since at least January 9, 2022.  For example, 85 randomly selected screenshots of Defendant's website, www.helzberg.com, were collected from the Internet Archive's Wayback Machine, from the 2022-2025 period. 79 of these 85 examples displayed a discount that applied to High-Priced Products.

28.    Reasonable consumers do not realize the fake nature of the sale.  It is not apparent from merely purchasing the High Priced Products, because the sale appears to be a bona fide sale.  Consumers do not have any reason to go back to the website day after day to discover that there is still a sale.  And, even a consumer who occasionally checks the website would reasonably believe that there happened to be another sale.  Discovering Defendant's deception required extensive mining of internet archives, which revealed that the sale is not limited in time, that the discounts are fake, and that the advertised regular prices are fake.

---

[2] The Internet Archive, available at archive.org, is a library that archives web pages.  https://archive.org/about/

29.     In addition, Defendant's website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts.

30.     For example, on April 17, 2025, Defendant advertised a purported sale of "15% off purchases $499.99+ or 10% off purchases under $499.99." As part of this discount, Defendant listed purported regular prices in strikethrough font.  For example, Defendant represented that the Lab Grown Diamond Bezel Station Necklace in 14K White Gold had a regular list price of $999.99 and a discount price of $849.99[3]:



*Captured on April 17, 2025*

31.     But the truth is, the Lab Grown Diamond Bezel Station Necklace in 14K White Gold's listed regular price of $999.99 is not its regular price.  Instead, the

---

[3] Defendant's purported discounts apply automatically or require the application of a coupon code.  The coupon codes are advertised extensively, including throughout the website, and purport to offer substantial savings, so substantially all or all of Defendant's customers make use of the coupon codes when available, and purchase at the discount price (not the regular price).

purported regular price is much lower, because Defendant regularly offers sitewide discounts on all products, and consistently offers discounts on products over $300. As a result, Defendant's customers did not receive a true 15% discount, or $149.99 off. They received a much lower discount, or no discount at all.

32. Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the High-Priced Products they are purchasing if they purchase during the supposed promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

33. Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the price at which the goods were actually offered for sale before the offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the sale began, and will again have to pay for Defendant's goods when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the supposed sale, consumers buying from Defendant had to pay the list price to get the item and did not have the opportunity to get a discount from that list price.

34. Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market value of the High-Priced Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant consistently offers discounts off the purported regular prices it advertises for items priced over $299.99, and regularly advertises sitewide discounts that apply to the listed regular prices of any product. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not

actually Defendant's regular or former prices, or the prevailing prices for the High-Priced Products Defendant sells. And, the list prices do not represent the true market value for the Products, because Defendant's High-Priced Products are consistently available for less than that, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time—quite the opposite, they are consistently available.

### B. Defendant's advertisements are unfair, deceptive, and unlawful

35. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

36. Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

37. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

38. In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

39.     And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices.  See Cal. Bus. & Prof. Code § 17200.

40.     Here, as described in detail above, Defendant makes untrue and misleading statements about its prices.  Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement.  In addition, Defendant advertises goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values.  Defendant makes false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of discounts, and the amounts of price reductions resulting from those discounts.  And Defendant engages in unlawful, unfair, and deceptive business practices.

## C.    Defendant's advertisements harm consumers.

41.     Based on Defendant's advertisements, reasonable consumers expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its High-Priced Products and that these are former prices that Defendant sold its Products at before the discount was introduced.

42.     Reasonable consumers also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

43.     In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

44.     Consumers that are presented with discounts are substantially more likely to make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on

making a purchase."[4]  And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[5]

45.    Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[6]

46.    Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information.  In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products.  This puts upward pressure on the prices that Defendant can charge for its Products.  As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above.  So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

### D.    Plaintiff was misled by Defendant's misrepresentations.

47.    In or around December 2022, Ms. Owens purchased the "14K Forever One LC" Moissanite Ring from Defendant's website, www.helzberg.com.  She made this purchase while living in Pico Rivera, California.  Around the time she made her purchase, Defendant's website was advertising a significant sale.  The website represented that the ring that she purchased had a regular price of $2,199.00 plus tax, but was on sale for a discounted price of $1,499.00. Defendant's website also advertised a limited-time "free Microsoft Surface Laptop Go," as a gift with purchase.

---

[4] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[5] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[6] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

48.     In the order receipt that Defendant delivered to Ms. Owens's address after she made her purchase, Defendant represented that the Product had a regular price of $2,199.00, and that Ms. Owens was receiving a discounted price of $1,499.00. Defendant also represented that Ms. Owens was receiving a free Microsoft Surface Laptop Go, valued at $650.00, as a gift with her purchase.

49.     Ms. Owens read and relied on Defendant's representations, specifically that the product was being offered at a discount for a limited time and had the regular prices listed above.  When making her purchase, she relied on the strike-through regular price of "$2,199.00," the discounted price of "$1,499.00," and that she would receive a discount of $700.00 and a laptop worth $650 if she bought during the sale.  She also relied on the representations that the sale was time-limited and expiring soon.  Based on Defendant's representations described and shown above, Ms. Owens reasonably understood that Defendant usually (and formerly, before the promotion Defendant was advertising) sold the Product she was purchasing at the published regular prices, that these regular prices were the market value of the Product that she was buying, that she was receiving the advertised discount as compared to the regular price, that advertised discount was only available for a limited time (during the limited time promotion), and that the product would go back to retailing for the published regular price when the promotion ended.  She would not have made the purchase if she had known that the Product was not discounted as advertised, and that she was not receiving the advertised discounts.

50.     In reality, as explained above, Defendant's High-Priced Products, including the Product that Ms. Owens purchased, are consistently available at a discounted price off the purported regular prices.  In other words, Defendant did not regularly sell the Product Ms. Owens purchased at the purported regular price, and the Product was not discounted as advertised.  Plus, the sale was not limited time—Defendant's products priced over $300 are consistently on sale, and in addition, Defendant regularly advertises sitewide sales that apply to all products.

51.    Plaintiff faces an imminent threat of future harm.  Plaintiff would purchase Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful.  But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive.  For example, while she could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in her missing out on the sale (*e.g.*, if the sale is actually limited in time, and not permanent).  Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would like to purchase.

**E.    Defendant breached its contract with and warranties to Ms. Owens and the putative class.**

52.    When Ms. Owens, and other members of the putative class, purchased and paid for the High-Priced Products that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases.  Each offer was to provide High-Priced Products having a particular listed regular price and market value, and to provide those High-Priced Products at the advertised discounted price.

53.    Defendant's advertisements, for example on its website, and receipts list the market value of the items that Defendant promised to provide.  Defendant agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Ms. Owens and putative class members.  For example, Defendant offered to provide Ms. Owens (among other things) the 14K White Gold Forever One Moissanite Ring with a market value of $2,199.00, and to provide a discount of $700.00 off plus a gift valued at $650.  Defendant also warranted that the regular price and market value of the High-Priced Product Ms. Owens purchased was the advertised list price and warranted that Ms. Owens was receiving a specific discount on the High-Priced Product.

54.     The regular price and market value of the items Ms. Owens and putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

55.     Ms. Owens and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

56.     Defendant breached its contract by failing to provide Ms. Owens and other members of the putative class with High-Priced Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised.  Defendant also breached warranties for the same reasons.

**F.     No adequate remedy at law.**

57.     Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

58.     A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months.  Cal. Bus. & Prof. Code § 17501.  Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

59.     In addition, to obtain a full refund as damages, Plaintiff must show that the Product she bought has essentially no market value.  In contrast, Plaintiff can seek restitution without making this showing.  This is because Plaintiff purchased a High-Priced Product that she would not otherwise have purchased, but for Defendant's

representations. Obtaining a full refund at law is less certain that obtaining a refund in equity.

60.     Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

61.     Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces.  Only an injunction can remedy this threat of future harm.  Plaintiff would purchase or consider purchasing High-Priced Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful.  But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive.  Thus, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase High-Priced Products she would like to purchase

## V.     Class Action Allegations.

62.     Plaintiff brings the asserted claims on behalf of the proposed class of:

- Nationwide Class: all persons who, within the applicable statute of limitations period, purchased one or more Helzberg High-Priced Products (i.e. Products that retailed over $299.99),  advertised at a discount.

- California Subclass: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Helzberg High-Priced Products advertised at a discount.

63.     The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been

finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity & Ascertainability

64.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

65.     Class members can be identified through Defendant's sales records and public notice.

### Predominance of Common Questions

66.     There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

### Typicality & Adequacy

67.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased Helzberg High-Priced Products advertised at a discount.  There are no conflicts of interest between Plaintiff and the class.

### Superiority

68.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

### First Cause of Action:

### Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.

### (By Plaintiff and the California Subclass)

69.    Plaintiff incorporates each and every factual allegation set forth above.

70.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

71.    Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

72.    Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and subclass members.

73.    As alleged more fully above, Defendant advertises former prices along with discounts.  Defendant does this, for example, by crossing out a higher price (*e.g.*, $2,199.00) and displaying it next to a lower, discounted price.  Reasonable consumers would understand prices advertised in strikethrough font from which discounts are calculated to denote "former" prices, i.e., the prices that Defendant charged before the discount went into effect.

74.    The prices advertised by Defendant are not Defendant's regular prices.  In fact, those prices are never Defendant's regular prices (i.e., the price you usually have to pay to get the Product or High-Priced Product in question), because there is consistently a heavily-advertised promotion ongoing entitling consumers to a discount.  Moreover, for the same reasons, those prices were not the former prices of the Products.  Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading.  In addition, Defendant's statements that its discounts are "limited time" and "end" after a certain time period are false and misleading too.

Class Action Complaint                    21                    Case No. 2:25-cv-03853

75.     In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement.  And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.  Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

76.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing a Helzberg High-Priced Product.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

77.     In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Helzberg High-Priced Products.

78.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

79.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the High-Priced Products if they had known the truth, (b) they overpaid for the High-Priced Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received High-Priced Products with market values lower than the promised market values.

80.     For the claims under California's False Advertising Law, Plaintiff seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's unlawful conduct.

**Second Cause of Action:**

**Violation of California's Consumer Legal Remedies Act (By Plaintiff and the California Subclass)**

81.    Plaintiff incorporates each and every factual allegation set forth above.

82.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

83.    Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

84.    Plaintiff and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

85.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

86.    As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to subclass members.  Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

87.    Defendant violated, and continues to violate, section 1770 of the California Civil Code.

88.    Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that High-Priced Products offered for sale have characteristics or benefits that they do not have.  Defendant represents that the value of its High-Priced Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

89.    Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code.  Defendant violates this by advertising its High-Priced Products as

Class Action Complaint                    23                    Case No. 2:25-cv-03853

being offered at a discount, when in fact Defendant does not intend to sell the High-Priced Products at a discount.

90.   And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, including by (1) misrepresenting the regular price of High-Priced Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, (4) misrepresenting the reason for the sale (*e.g.*, "Valentine's Sale," when in fact the sale is ongoing and not limited to Valentine's Day).

91.   Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

92.   Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing a Helzberg High-Priced Product.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

93.   In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to Helzberg High-Priced Products.

94.   Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

95.   Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the High-Priced Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the High-Priced Products because the High-Priced Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

Class Action Complaint                    24                    Case No. 2:25-cv-03853

96.     Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the subclass, seeks injunctive relief.

97.     CLRA § 1782 NOTICE.  On April 9, 2025, a CLRA demand letter was sent to Defendant's North Kansas City, Missouri headquarters and California registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA.

98.     A CLRA venue declaration is attached.

### Third Cause of Action:

### Violation of California's Unfair Competition Law

### (By Plaintiff and the California Subclass)

99.     Plaintiff incorporates each and every factual allegation set forth above.

100.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

101.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

### *The Unlawful Prong*

102.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

### *The Deceptive Prong*

103.    As alleged in detail above, Defendant's representations that its High-Priced Products were on sale, that the High-Priced Products had a specific regular price, that the sales were limited in time, and that the customers were receiving discounts were false and misleading.

Class Action Complaint                          25                     Case No. 2:25-cv-03853

104.    Defendant's representations were misleading to Plaintiff and other reasonable consumers.

105.    Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

### The Unfair Prong

106.    As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its High-Priced Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

107.    Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

108.    The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misrepresenting the price of a consumer product.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading consumer products only injure healthy competition and harm consumers.

109.    Plaintiff and the subclass could not have reasonably avoided this injury.  As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

110.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

111.    For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing a Helzberg High-Priced Product.  Defendant's representations were a substantial factor in Plaintiff's purchase decision.

112.    In addition, subclass-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Helzberg High-Priced Products.

113.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass members.

114.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the High-Priced Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the High-Priced Products because the High-Priced Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

115.    For the claims under California's Unfair Competition Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's unlawful conduct.

<u>**Fourth Cause of Action:**</u>

**Breach of Contract**

**(By Plaintiff and the Nationwide Class)**

116.    Plaintiff incorporates each and every factual allegation set forth above.

117.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

118.    Plaintiff and class members entered contracts with Helzberg when they placed orders to purchase High-Priced Products.

119.    The contracts provided that Plaintiff and class members would pay Helzberg for the High-Priced Products ordered.

120.    The contracts further required that Helzberg provides Plaintiff and class members with High-Priced Products that have a market value equal to the advertised list prices.  They also required that Helzberg provides Plaintiff and the class members with the discount advertised, and listed in the receipt.  These were specific and material terms of the contract.

121.    The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and class members at the time they placed their orders.

122.    Plaintiff and class members paid Helzberg for the High-Priced Products they ordered, and satisfied all other conditions of their contracts.

123.    Helzberg breached the contracts with Plaintiff and class members by failing to provide High-Priced Products that had a prevailing market value equal to the list price, and by failing to provide the promised discount.  Helzberg did not provide the discount that Helzberg had promised.

124.    As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

125.    For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's unlawful conduct.

### Fifth Cause of Action:

### Breach of Express Warranty

### (By Plaintiff and the Nationwide Subclass)

126.    Plaintiff incorporates each and every factual allegation set forth above.

127.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

128.    Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of Helzberg High-Priced Products, issued material, written warranties by

advertising that the High-Priced Products had a prevailing market value equal to the list price. This was an affirmation of fact about the High-Priced Products (i.e., a representation about the market value) and a promise relating to the goods.

129. This warranty was part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

130. In fact, Helzberg Products' stated market value was not the prevailing market value. Thus, the warranty was breached.

131. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's registered agent and Missouri headquarters on April 9, 2025.

132. Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased High-Priced Products if they had known that the warranty was false, (b) they overpaid for the High-Priced Products because the High-Priced Products were sold at a price premium due to the warranty, and/or (c) they did not receive the High-Priced Products as warranted that they were promised.

133. For their breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's unlawful conduct.

<u>Sixth Cause of Action</u>:

**Quasi-Contract/Unjust Enrichment**

**(By Plaintiff and the Nationwide Class)**

134. Plaintiff incorporates paragraphs 1-51 and 57-68 above.

135. Plaintiff brings this cause of action in the alternative to her Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this claim on behalf of herself and the California Subclass.

Class Action Complaint 29 Case No. 2:25-cv-03853

136. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase Helzberg Products and to pay a price premium for these Products.

137. In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

138. (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other class members are void or voidable.

139. Plaintiff and the class seek restitution, and in the alternative, rescission.

140. For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's unlawful conduct.

## Seventh Cause of Action:

### Negligent Misrepresentation

### (By Plaintiff and the California Subclass)

141. Plaintiff incorporates each and every factual allegation set forth above.

142. Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

143. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and California Subclass members concerning the existence and/or nature of the discounts and savings advertised.

144. These representations were false.

145. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

146. Defendant intended that Plaintiff and California Subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

Class Action Complaint                    30                    Case No. 2:25-cv-03853

147.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Helzberg High-Priced Products.

148.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and California Subclass members.

149.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the High-Priced Products if they had known that the representations were false, (b) they overpaid for the High-Priced Products because the High-Priced Products were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received High-Priced Products with market values lower than the promised market values.

150.    For the negligent misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's unlawful conduct.

## **Eighth Cause of Action:**

### **Intentional Misrepresentation**

### **(By Plaintiff and the California Subclass)**

151.    Plaintiff incorporates each and every factual allegation set forth above.

152.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

153.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and California Subclass members concerning the existence and/or nature of the discounts and savings advertised.

154.    These representations were false.

155. When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

156. Defendant intended that Plaintiff and California Subclass members rely on these representations and Plaintiff and California Subclass members read and reasonably relied on them.

157. In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Helzberg High-Priced Products.

158. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and California Subclass members.

159. Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the High-Priced Products if they had known that the representations were false, (b) they overpaid for the High-Priced Products because the High-Priced Products were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received High-Priced Products with market values lower than the promised market values.

160. For the intentional misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's unlawful conduct.

## VII. Relief.

161. Plaintiff seeks the following relief for herself and the class and subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class and subclass;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;

- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## **Demand For Jury Trial**

162.    Plaintiff demands the right to a jury trial on all claims so triable.

Dated: April 30, 2025                          Respectfully submitted,

                                              By: _/s/ Simon Franzini_
                                              Simon Franzini (Cal. Bar No. 287631)
                                              simon@dovel.com
                                              DOVEL & LUNER, LLP
                                              201 Santa Monica Blvd., Suite 600
                                              Santa Monica, California 90401
                                              Telephone: (310) 656-7066
                                              Facsimile: (310) 656-7069

                                              *Attorney for Plaintiff*